*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

EXCELSIOR INSURANCE COMPANY, *et al.*

       Plaintiff,

v.

GRANITE STATE INSURANCE COMPANY

       Defendant.

Civ. Action No. 16-4911 (FLW)

OPINION

**WOLFSON, District Judge**:

Plaintiff insurance-carriers Excelsior Insurance Company ("EIC"), Liberty Mutual Insurance Company, and Peerless Insurance Company (collectively, "Plaintiffs")[1] filed this action against Defendant Granite State Insurance Company ("Defendant"), seeking reimbursement of the costs to defend and settle an underlying tort action. In lieu of an answer, Defendant moves for dismissal, arguing against the request for reimbursement of Plaintiffs' expenses through subrogation or indemnification, because Plaintiffs and Defendant did not insure a common entity in the underlying action. In response, Plaintiffs cross-move for leave to amend the Complaint, seeking reformation of Defendant's insurance policy to include an additional insured, based upon mutual mistake. For the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED**, and Plaintiffs' Request to File a Proposed Amended Complaint in the form submitted is **DENIED**; in the event that Plaintiffs can plead additional facts sufficient to state a claim based upon mutual

---

[1] EIC and Peerless Insurance Company are subsidiaries or successors of Liberty Mutual Insurance Company. Proposed Amended Complaint ("Am. Compl."), Parties, ¶ 1.

1

mistake, Plaintiffs may file an Amended Complaint consistent with the dictates of this Opinion, within thirty (30) days of the date of the Order accompanying the Opinion.

## BACKGROUND

### a. The Underlying Suit

On January 7, 2010, Ronnie Baker ("Baker") was injured while working as an employee of Community Care Services ("CCS"), a tenant of a shopping center located on 900 Easton Avenue in Somerset, New Jersey. Am. Compl., Parties, ¶ 1. Subsequently, Baker brought suit in the Middlesex County Superior Court against the Easton Shopping Center ("ESC") and Littman & Pakenham, Inc. ("L&P"), the alleged co-landlords of the shopping center (the "underlying suit").[2] Am. Comp., Factual Background, ¶ 1, Count I, ¶ 4. Plaintiffs incurred various costs in connection with defending both ESC and L&P in the underlying suit. *See* Am. Compl., Factual Background, ¶ 1.

### b. The Excelsior and Granite State Insurance Policies

EIC provided a policy of insurance to L&P as the named insured, bearing a policy number ending in 1494 (the "Excelsior Policy"), with a policy period from June 1, 2009 to June 1, 2010. Rossignol Cert., ¶ 4, Excelsior Policy.[3] ESC, on the other hand, was neither a named insured nor an additional insured under this plan. Rossignol Cert., ¶ 4, Excelsior Policy.

---

[2] Defendant argues that ESC and L&P are not co-landlords because the language of CCS's Lease Agreement defines the term "Landlord" to solely include "EASTEN CENTER." Since the relationship between ESC and L&P is not central to the legal issue at bar, for the purposes of this motion, the Court will not address this discrepancy, but will accept Plaintiffs' allegation that ESC and L&P are co-landlords as true. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) ("[I]t is well established that in deciding a motion to dismiss . . . a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." (internal quotations and citations omitted).

[3] Generally, when ruling on a motion to dismiss, a district court may consider documents that are "integral to or explicitly relied upon in the complaint." *In re Rockefeller Ctr. Props., Inc.*

2

Defendant Granite State provided a policy of insurance to CCS as the named insured, bearing a policy number ending in 376-2 (the "Granite State Policy"), with a policy period from May 25, 2009 to May 25, 2010. Rossignol Cert., ¶ 5, Granite State Policy. Effective as of May 25, 2009, the plan was subsequently amended through a "General Change Endorsement" to include ESC, the co-landlord, as an additional insured. Rossignol Cert., ¶ 6, General Change Endorsement. L&P, however, was not a named insured or an additional insured under the Granite State Policy. Rossignol Cert., ¶ 5, Granite State Policy.

### c. Settlement of the Underlying Suit

The underlying state court action was ultimately settled by the parties, Baker and ESC and L&P, in mediation, for $400,000, the entirety of which was paid by EIC. Am. Compl., Count I, ¶ 1, Count II, ¶ 1. Indeed, Granite State did not contribute to the settlement payment, nor did any other entity contribute on behalf of Granite State. Am. Compl., Factual Background, ¶ 1. "Prior to the settlement and after the settlement, request for tender of defense, tender of indemnity, [and] participation in the settlement/mediation process, were sent on behalf of [EIC] to [Granite State]." The tenders, however, were refused. Am. Compl., Factual Background, ¶ 1.

### d. Procedural History

On June 20, 2016, Plaintiffs filed a two-count Complaint against Defendant in the Superior Court of New Jersey, Law Division, Middlesex County. *See* Original Complaint ("Compl."). On August 11, 2016, Granite State removed that case to this Court. In Count I of the Original Complaint, Plaintiffs seek reimbursement of the costs associated with the underlying suit. Compl., Count I, ¶ 6 ("Plaintiffs . . . are entitled to seek reimbursement of reasonable expenses and defense

---

*Sec. Litig.*, 184 F.3d 280, 287 (3d Cir.1999) (emphasis and citations omitted). Because the relevant insurance policies in this case are referenced in the Amended Complaint, the Court can consider them on this motion.

3

of the underlying claim, reasonable attorney's fees, reasonable cost, and recoup[ment] of any indemnity payment."). In Count II, it appears that Plaintiffs seek to reform the Granite State Policy to include L&P as an additional insured; however, Plaintiffs do not assert any legal basis upon which to reform the Granite State Policy. Compl., Count II, ¶ 1 ("In the alternative, it is requested . . . that the certificate of liability insurance naming Eastern Shopping Center as an insured be amended to reflect both Eastern and [L&P] as insured of the policy . . . . ").

Subsequently, Defendant filed a Motion to Dismiss both Counts of Plaintiffs' Original Complaint, pursuant to Rule 12(b)(6). In the Motion, Defendant argues that Plaintiffs are not entitled to recover the costs of defending and settling the underlying action by asserting a claim for subrogation or indemnification, because Plaintiffs have failed to plead a prerequisite—that the Excelsior and Granite State insurance policies reflect a common insured.

Plaintiffs, in response, do not dispute that the Excelsior and Granite State insurance policies do not insure a common entity. Instead, Plaintiffs filed a Cross-Motion for leave to amend the Complaint, wherein Plaintiffs request permission "to more thoroughly explain the relief that they are seeking and why they are entitled to such relief," and submit a newly proposed two-count Amended Complaint. Plaintiffs' Memorandum of Law in Support of Cross-Motion for Leave to Amend the Complaint ("Pls.' Request to Amend"), at 1. Specifically, in Count 1 of the proposed amended complaint, Plaintiffs, once again, seek indemnity payments in connection with the underlying suit. In Count II, Plaintiffs seek reformation of the Granite State Policy to include L&P as an additional insured, on the basis of mutual mistake. Plaintiffs' Cross-Motion is opposed by Defendant.

4

**DISCUSSION**

**I.     Standard of Review**

When considering a motion to amend, "[t]he Supreme Court has instructed that although 'the grant or denial of an opportunity to amend is within the discretion of the District Court, . . . outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules.'" *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). Nonetheless, a court may deny a plaintiff leave to amend for a variety of reasons, including undue delay, bad faith, dilatory motive, prejudice and futility. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997); *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Under Third Circuit precedent, a "futile" amendment is one that fails to state a claim upon which relief could be granted. *Burlington,* 114 F.3d at 1434; *Grayson v. Mayview State Hospital*, 293 F.3d 103, 113 (3d Cir. 2002). Thus, in determining whether a complaint, as amended is futile, the District Court must apply the sufficiency standard set forth under Rule 12(b)(6). *Shane*, 213 F.3d at 115.

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted). In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that

the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. at 1968 (quoting *Conley*, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id*. at 1965. As the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 S.Ct. at 1965).

## II. Plaintiffs' Proposed Amended Complaint is Futile

Defendant argues that Plaintiffs are not entitled to reimbursement, because the Excelsior and Granite State policies do not insure a common entity, *i.e.,* ESC and L&P. Plaintiffs, in response, concede this point. Instead, Plaintiffs seek to amend their Complaint to reform the Granite State Policy, adding L&P as an additional insured through the doctrine of mutual mistake. In opposition to Plaintiffs' Cross-Motion, Defendant only argues that Plaintiffs' allegations regarding mutual mistake are futile. In that regard, there is no dispute that Plaintiffs' proposed amended claims rise and fall on whether Plaintiffs properly state a claim for mutual mistake. Therefore, the Court's inquiry is confined to this question.

As the basis of mutual mistake, Plaintiffs allege that ESC and L&P are co-landlords of the shopping center in which CCS's business is located. Am. Compl., Count II, ¶¶ 3-4. Plaintiffs further allege that CCS entered into a Lease Agreement that required CCS "to obtain comprehensive general liability insurance for the protection of the [shopping center's] landlord(s)." Am. Compl., Count, II, ¶ 3. According to Plaintiffs, , "a mutual mistake of fact

6

occurred when [CCS] went to Granite State and asked to obtain coverage for only [ESC] and when Granite State provided a policy that gave coverage to only [ESC] and not [L&P]." Am. Compl., Count II, ¶ 6. These allegations are not sufficient to establish mutual mistake for pleading purposes.

The principles of contract interpretation and reformation have been set forth by the Supreme Court of New Jersey:

> As a general rule, courts should enforce contracts as the parties intended. Similarly, it is a basic rule of contractual interpretation that a court must discern and implement the common intention of the parties. The Court's role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the expressed general purpose.

*Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 231 (3d Cir. 2011) (citing *Pacifico v. Pacifico*, 920 A.2d 73, 77 (N.J. 2007)). In light of these principles, "when interpreting an insurance policy, courts should give the policy's words their plain, ordinary meaning." *Id.* (citing *Nav-Its, Inc. v. Selective Ins. Co. of Am.*, 869 A.2d 929, 933 (2005)). This is done by "interpret[ing] [the] contract according to its plain language by reading the document as a whole in a fair and common sense manner so as to match the reasonable expectations of the parties." *Id.* (citing *Hardy ex rel. Dowdell v. Abdul-Matin*, 965 A.2d 1165, 1168-69 (N.J. 2009)).

Nevertheless, "the primary goal of contract interpretation is always to 'enforce contracts as the parties intended.'" *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 85 F. Supp. 3d 785, 794 (D.N.J. 2015) (quoting *Pacifico*, 920 A.2d at 77)). Therefore, in some instances, a court may "'reform the terms of a written instrument on a claim of mutual mistake, without regard to whether the writing is in fact ambiguous.'" *Id.* (citing *Cent. State Bank v. Hudik-Ross Co., Inc.*, 396 A.2d 347, 350 (App. Div. 1978)); *Savings Inv. & Trust Co. v. Connecticut Mut. Life Ins. Co.*, 85 A.2d 311, 314 (Ch. Div. 1951) ("That contracts where there is a mutual mistake common to both parties may be reformed in equity is so well settled in our jurisprudence that it seems

7

unnecessary to cite but few cases."). Stated differently, "in New Jersey even an unambiguous contract may be reformed when there was mutual mistake and the written contract does not match what the parties intended." *Id*. (citing *Cent. State Bank,* 396 A.2d at 350.)

To that end, a finding of mutual mistake is appropriate where the parties have "met and reached a prior existing agreement, which the written document fails to express." *Bonnco Petrol, Inc. v. Epstein*, 115 N.J. 599, 608 (1989) (internal citations omitted). "As the name implies, the mistake must be mutual; reformation is warranted only when '*both* parties were laboring under the *same* apprehension as to [a] particular, essential fact' and when the mistake has a material effect on the agreed-upon exchange." *Ill. Nat'l Ins. Co.*, 85 F. Supp. 3d at 795 (quoting *Bonnco Petrol*, *Inc*., 560 A.2d at 659). Therefore, "'[f]or a court to grant reformation there must be clear and convincing proof that the contract in its reformed, and not original, form is the one that the contracting parties understood and meant it to be.'" *Id*. (quoting *Cent. State Bank,* 396 A.2d at 351); *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 988 F.2d 386, 404 (3d Cir. 1993) ("Reformation is available when clear and convincing evidence shows . . . their mutual mistake resulted in a written document which does not accurately reflect the terms of the parties' agreement." (citing Restatement (Second) of Contracts § 155 (1981)).

Here, assuming that ESC and L&P are co-landlords, Plaintiffs fail to allege facts in the proposed amended complaint establishing mutual mistake. First, even if CCS was required to obtain coverage for L&P, pursuant to the Lease Agreement, the proposed amended complaint does not allege that CCS and Granite State "met and reached a prior existing agreement, which the written [Granite State Policy] fails to express." *Bonnco*, 560 A.2d at 608 (internal citations omitted). To the contrary, Plaintiffs' assertions, as pled, tend to show that CCS and Granite State never agreed to include L&P as an additional insured under the Granite State Policy. Indeed,

8

Plaintiffs maintain that CCS and Granite State both were operating under a mistake of fact when the parties entered into the insurance agreement, because, according to Plaintiffs, CCS informed Granite State to *only* provide coverage for ESC. Plaintiffs argue that, therefore, Granite State issued a policy under which ESC was the sole insured. *See* Am. Complaint, Count II, ¶ 6. However, that is not sufficient to establish a mutual mistake, since Granite State and CCS were not "laboring under the *same* apprehension as to [an] essential fact"—that L&P required coverage. *Bonnco*, 560 A.2d at 608 (internal quotations and citations omitted). In fact, Granite State provided CCS with the exact insurance policy that CCS requested, which is one that solely provided coverage for ESC. At most, the proposed amended complaint alleges that a unilateral mistake was made on the part of CCS, in that, CCS allegedly failed to inform Granite State that L&P required coverage under the Lease Agreement. Hence, the Court cannot find that Plaintiffs have adequately pled that a mutual mistake occurred, as the proposed amended complaint fails to allege that CCS and Granite State reached a prior agreement that the Granite State Policy fails to express. *St. Pius X House of Retreats, Salvatorian Fathers v. Diocese of Camden*, 88 N.J. 571, 579 (1982) ("Reformation predicated upon mutual mistake requires that both parties are in agreement at the time they attempt to reduce their understanding to writing, and that the writing fails to express that understanding correctly."). Accordingly, Plaintiffs' proposed amendments as to mutual mistake are futile; because Plaintiffs' claims are dependent upon establishing mutual mistake, the Original Complaint is dismissed in its entirety.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED** and Plaintiffs' Cross-Motion to File an Amended Complaint is **DENIED**. In the event that Plaintiffs can plead facts that would support a theory of mutual mistake, Plaintiffs may file an Amended Complaint consistent with the dictates of this Opinion, within thirty (30) days of the date of the Order accompanying the Opinion.

Dated: April 28, 2017

/s/ Freda L. Wolfson
Freda L. Wolfson
United States District Judge
